UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER L. KAISER,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. C25-2040-KKE

ORDER AFFIRMING THE COMMISSIONER'S DECISION

## I. INTRODUCTION

Plaintiff seeks review of a decision partially granting and partially denying her application for Supplemental Security Income and denying her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting her subjective testimony and in assessing medical opinion evidence. Dkt. No. 14 at 1–2. As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1968, has a high school diploma and two associate's degrees, and has worked as a medical assistant, office assistant, and peer counselor. Dkt. Nos. 9–11 (hereinafter Administrative Record ("AR")) at 138, 143. Plaintiff was last gainfully employed in 2016. *Id.* at 395.

In 2017, Plaintiff most recently applied for benefits, alleging disability as of December 31, 2015. AR at 19, 136. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 240, 253–60, 262–65. After the ALJ conducted a hearing in April 2024 (*id.* at 127–58), the ALJ issued a decision finding Plaintiff disabled as of June 19, 2023, and not disabled before that date. *Id.* at 17–41.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1–6. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. Nos. 1, 4.

## III. THE COMMISSIONER'S FINAL DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since her alleged onset date.

**Step two:** Plaintiff has the following severe impairments: thoracolumbar spine degenerative changes, fibromyalgia, chronic fatigue syndrome, bilateral hip abnormalities, obesity, obstructive sleep apnea, major depressive disorder, generalized anxiety disorder, attention deficit hyperactivity disorder, and obsessive-compulsive disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** Plaintiff can perform light work with additional limitations: she can occasionally climb, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme vibrations and hazards such as unprotected heights and dangerous machinery. She can understand, remember, and carry out detailed, but not complex tasks, with standard work breaks provided and work goals set by others. She can handle occasional routine workplace changes.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** Until June 19, 2023, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, and she was therefore not disabled before

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

> that date. But beginning on June 19, 2023, Plaintiff became disabled and continues to be disabled through the date of the decision

AR at 17–42.

## IV. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.* at 954.

## V. DISCUSSION

### A. The ALJ Did Not Err in Discounting Plaintiff's Subjective Symptom Testimony.

The ALJ summarized Plaintiff's self-reported symptoms and limitations and explained that he discounted her testimony because: (1) Plaintiff did not complain of or seek treatment for spine or hip impairments; (2) Plaintiff's sleep apnea improved with treatment, (3) Plaintiff's chronic fatigue syndrome and fibromyalgia symptoms improved with medication; (4) there is evidence that Plaintiff abused her narcotic pain medication and exhibited drug-seeking behavior, and Plaintiff did not comply with medical advice to reduce her use of narcotics and increase exercise and social activities; (5) Plaintiff's mental symptoms flared due to situational stressors and improved with medication; (6) Plaintiff's treatment notes contain many normal mental status examinations; and (7) Plaintiff reported a level of activity that is inconsistent with the symptoms she alleged. AR at 27–31. Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

First, Plaintiff argues that although the ALJ found that the record does not support the existence of disabling back or hip limitations, she concedes that these limitations are not disabling and thus the ALJ failed to identify an inconsistency between the record and her testimony. Dkt. No. 14 at 3. But at the administrative hearing in 2024, and in earlier paperwork submitted to the Commissioner, Plaintiff alleged disabling back and hip pain. *See* AR at 95, 106, 439, 454. The ALJ did not err in addressing the limitations Plaintiff alleged.

Second, Plaintiff argues that the ALJ erred in discounting allegations of disabling sleep apnea symptoms because the ALJ did not cite any evidence that contradicts Plaintiff's allegations. Dkt. No. 14 at 4. In finding that Plaintiff's sleep apnea was not disabling, the ALJ noted that Plaintiff reported improvement with a sleep apnea machine and that the record did not support the

existence of disabling limitations caused by this condition. AR at 28 (citing *id*. at 2137). In the treatment note cited by the ALJ, Plaintiff reported that her sleep apnea machine helps her sleep problems, although she was not unsure whether medication helped as well. *Id*. at 2137. Plaintiff does not identify any other medical evidence in the record that would support the existence of disabling limitations resulting from her sleep apnea, nor does she dispute that she reported improvement with a sleep apnea machine. Accordingly, Plaintiff's argument fails to identify an error in the ALJ's decision.

Third, Plaintiff notes that although the ALJ discounted her allegations of fibromyalgia and chronic fatigue syndrome[3] in light of her reports to providers that treatment improved her pain symptoms by 70%, there were in fact some days where her pain persisted and even an improvement of 70% does not necessarily imply that she can work. Dkt. No. 14 at 4. In support of her argument, Plaintiff cites a treatment note where she reported more pain in her low back and hip, and 40% improvement as well as 70% improvement. AR at 2746. Plaintiff also cites another treatment note where she reported "a significant amount of increased pain, especially in her hips" and requested additional narcotic medication. *Id*. at 2832. These treatment notes fail to establish error in the ALJ's decision, particularly given that Plaintiff has, in her briefing, disavowed any disabling back or hip limitations. Dkt. No. 14 at 3. Plaintiff's argument also fails to show that the ALJ erred in finding that evidence of Plaintiff's improvement with pain medication undermined an allegation that disabling pain persisted despite treatment. *See* AR at 28–29; *Wellington v.*

[3] Plaintiff argues that the ALJ failed to provide any reason to discount her allegations of chronic fatigue syndrome, but addressed only her fibromyalgia pain in this section. Dkt. No. 14 at 6. Plaintiff does not identify any particular alleged limitation that the ALJ overlooked, however, and thus has failed to show harmful error in this portion of the ALJ's decision. The Court declines to assume that Plaintiff's chronic fatigue syndrome led to unspecified limitations not accounted for in the ALJ's RFC assessment.

*Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

Fourth, Plaintiff argues that the ALJ erred in discounting her allegations based on evidence of drug abuse and drug-seeking behavior, because "there is not a single finding in the record in which the Plaintiff is being accused either of drug seeking behavior or drug abuse." Dkt. No. 14 at 6. This argument is inconsistent with the record, which indeed contains evidence of Plaintiff's drug-seeking behavior such as early refills, requests for increases despite normal physical examinations, obtaining prescriptions from multiple providers, and overtaking prescribed doses, as well as unheeded medical recommendations to taper her opioid use. *See, e.g.*, AR at 1054, 1168, 2133–35, 2196–97, 2831, 2839, 2844, 2854. Moreover, the ALJ cited evidence that Plaintiff's medical providers believed her use of opioids was exacerbating her mental symptoms, her headaches, and her sleep problems and recommended a decrease, and that Plaintiff did not follow this recommendation. *Id*. at 29 (citing *id*. at 1053, 2196–97).

Plaintiff points to one treatment note that she claims establishes that she only "minimally" uses opioids (Dkt. No. 14 at 6–7 (citing AR at 1696)), but she misquotes the treatment note: the treatment note states that the provider warned Plaintiff that some of her medications (including opioids and Lyrica) can cause concentration problems, and Plaintiff reported that she minimally uses most of those medications—but the "[e]xception is opioid and Lyrica." AR at 1696. Plaintiff has not shown that the ALJ erred in finding that the record contained evidence of drug-seeking behavior, or in discounting Plaintiff's self-reporting based on that evidence. *See Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020); *Massey v. Comm'r Soc. Sec. Admin.*, 400 F. App'x 192, 194 (9th Cir. Oct. 19, 2010) ("[T]he ALJ's interpretation that [the claimant] is engaged in drug-seeking behavior is a clear and convincing reason for disregarding his testimony.").

As to mental allegations, the ALJ noted that the objective medical record contained many normal findings and evidence of Plaintiff's improvement with treatment, but acknowledged that the record did corroborate the existence of some mental limitations. AR at 29–30. Although Plaintiff contends that the ALJ should have given more weight to the abnormal findings rather than the normal findings, she has not shown that the ALJ's rationale is unreasonable. Dkt. No. 14 at 9–10. She generally challenges the ALJ's assessment of her daily activities and part-time work activity, arguing that activities cited are not inconsistent with her allegations and that even her part-time job does not undermine her allegations. *Id*. at 8–10. But the ALJ identified specific inconsistencies between Plaintiff's allegations and her activities, finding an inconsistency between her allegation of an inability to walk more than half a block or sit for 20–30 minutes with her self-reported ability to shop, walk her dog, walk with friends, and work part-time as a caretaker. AR at 31. The ALJ also contrasted Plaintiff's allegation of an inability to focus or concentrate with her ability to prepare meals, perform routine chores, drive, shop, watch television, play games, read, remember her appointments, and follow her medication regimen. *Id*. The ALJ reasonably found these activities to be inconsistent with Plaintiff's alleged limitations, and did not err in discounting Plaintiff's self-reporting for this reason. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (in discounting a claimant's testimony, "[a]n ALJ may also consider 'whether the claimant engages in daily activities inconsistent with the alleged symptoms'" (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007))).

Because the ALJ provided many valid reasons to discount Plaintiff's testimony, the Court affirms this part of the ALJ's decision.

**B. The ALJ Did Not Err in Assessing the Medical Opinion Evidence.**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Plaintiff challenges the ALJ's assessment of opinions written by four medical providers, which the Court will address in turn.

1. *The ALJ Did Not Err in Assessing the Opinions of Elizabeth Shuckhart, PA-C.*

In 2016, Ms. Shuckhart, Plaintiff's primary care provider, opined that Plaintiff would be limited to performing sedentary work for a period of "possibly" 6–12 months and recommended that Plaintiff engage in daily light aerobic activity, stretching, and strengthening, and follow up with a psychiatrist for medication management. AR at 973–77. Ms. Shuckhart again found Plaintiff capable of performing sedentary work in September 2018 for a period of 6–12 months. *Id*. at 983–87.

The ALJ found Ms. Shuckhart's conclusions unsupported because she did not adequately explain why Plaintiff would be limited to sedentary work and the objective medical findings do not corroborate that conclusion. AR at 32. Plaintiff posits that because Ms. Shuckhart is Plaintiff's primary care provider, it was not necessary for her to restate her treatment notes in this form opinion. Dkt. No. 14 at 12–13. But the Commissioner's regulations instruct ALJs to consider whether an opinion is adequately explained, in assessing its persuasiveness. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)

or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.”). Plaintiff has failed to show that the ALJ erred in finding that Ms. Shuckhart did not support her opinion regarding sedentary work with an explanation, or that the lack of explanation rendered her opinion less persuasive.

Plaintiff also suggests that the ALJ erred by finding opinions from non-treating physicians[4] written in 2017 and 2019—“before most of the medical evidence of record had been developed”—more persuasive than Ms. Shuckhart’s opinions. Dkt. No. 14 at 13. But Ms. Shuckhart’s opinions were written in 2016 and 2018, and which undermines Plaintiff’s argument that 2017 and 2019 opinions are too early during the relevant period to be probative. Accordingly, the Court finds no error in the ALJ’s assessment of Ms. Shuckhart’s opinions.

2. *The ALJ Did Not Err in Assessing the Opinion of David Widlan, Ph.D.*

Dr. Widlan performed a psychological examination of Plaintiff in 2018, without reviewing any records, and identified several moderate functional limitations as well as some marked limitations. AR at 1179–87. The ALJ found some of Dr. Widlan’s opinion to be persuasive, but found Dr. Widlan’s opinion as to the marked limitations to be unpersuasive because (1) the opinion was based on Plaintiff’s self-reporting rather than a longitudinal view of the records, and her self-report is inconsistent with the record; and (2) the opinion was inconsistent with the medical records showing improvement with treatment, unremarkable mental status examinations, fairly intact functioning, and a focus on situational stressors rather than impairments. *Id*. at 35.

---

[4] Although Plaintiff emphasizes the “non-treating or examining” status of certain providers who opined as to her functioning (Dkt. No. 14 at 13, 14), the hierarchy of medical opinions applicable under the pre-2017 regulations does not apply to this case. *See Woods*, 32 F.4th at 791–93. Thus, the Court generally looks to whether Plaintiff has shown that the ALJ erred in assessing the supportability and consistency of each challenged medical opinion, rather than comparing the ALJ’s assessment of an opinion vis a vis another opinion, subject to exceptions not applicable here. *See, e.g.*, 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (explaining that an ALJ may consider a claimant’s relationship with a medical source when evaluating two or more medical opinions that are equally well-supported and consistent with the record, but “not exactly the same”). Here, whether the ALJ found non-treating source opinions persuasive is not relevant to whether the ALJ erred in finding Ms. Shuckhart’s opinion unsupported and inconsistent with the record.

Plaintiff argues that the ALJ erred in discounting Dr. Widlan's testimony because it is based on self-reporting and inconsistent with the record, relying on arguments made with respect to the ALJ's assessment of her own testimony. Dkt. No. 14 at 13. But for the reasons explained in this order, the ALJ did not err in discounting Plaintiff's testimony, and it follows that the ALJ did not err in finding unpersuasive an opinion that is based on that reporting without access to the longitudinal record. *See, e.g.*, *J.L. v. Comm'r of Soc. Sec.*, No. 25-cv-07378-PCP, __ F. Supp. 3d __, 2026 WL 2392375, at *5 (N.D. Cal. Aug. 17, 2026) (noting that because the supportability of an opinion depends on the medical source's consideration of the relevant objective medical evidence). The regulations require the ALJ to consider whether a medical opinion is supported by clinical findings. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Moreover, the ALJ noted that like Plaintiff's testimony that it is based on, Dr. Widlan's opinion is inconsistent with other evidence in the longitudinal record. AR at 35. Although Plaintiff disagrees with that finding of inconsistency, the Court has rejected those arguments as explained earlier in this order, and Plaintiff has failed to show that the ALJ's finding is erroneous. Accordingly, the ALJ did not err in finding Dr. Widlan's opinion unpersuasive to the extent it is unsupported and inconsistent with the record and the Court affirms this part of the ALJ's decision.

3. *The ALJ Did Not Err in Assessing the Opinion of George Ankuta, M.D.*

Dr. Ankuta performed a psychological examination of Plaintiff in April 2024 and completed a narrative opinion as well as a form opinion describing her impairments and limitations that he opined existed since September 2018. AR at 4348–58.

The ALJ summarized the limitations described in Dr. Ankuta's opinion and explained that because Dr. Ankuta examined Plaintiff in April 2024, he found the opinion to be persuasive as to Plaintiff's functional abilities in early 2024, but not as far back as September 2018, as Dr. Ankuta

claimed. AR at 37. The ALJ noted that Dr. Ankuta cited Dr. Widlan's opinion as support for the September 2018 onset date, yet Dr. Widlan did not review any records dating to that time or any other time and, moreover, did not assess limitations as severe as those indicated by Dr. Ankuta. *Id*. The ALJ thus concluded that "while Dr. Ankuta's report may establish severe mental health limitations on or around the time he first saw the claimant, it does not persuasively establish limitations significantly beyond that time." *Id*. And because the ALJ found that Plaintiff's disability began in June 2023, the ALJ explained that Dr. Ankuta's opinion indicating that Plaintiff had disabling mental limitations in early 2024 is consistent with that conclusion. *Id*.

Plaintiff does not reference the ALJ's reasoning with respect to the timing of Dr. Ankuta's opinion, but instead generally challenges the ALJ's finding that Dr. Ankuta's opinion as to pre-2024 functioning is unsupported by the April 2024 examination findings and inconsistent with evidence he cites. Dkt. No. 14 at 14. Yet Plaintiff has not explained why it was unreasonable for the ALJ to find that Dr. Ankuta's opinion was persuasive only for a limited time period, and unsupported and inconsistent with the record before 2024. By failing to acknowledge the timing rationale provided by the ALJ, Plaintiff has failed to meet her burden to show harmful legal error in the ALJ's decision. Accordingly, the Court affirms the ALJ's assessment of Dr. Ankuta's opinion.

4. *The ALJ Did Not Err in Assessing the Opinion of Richard McCracken, PA-C.*

Mr. McCracken completed a form opinion describing Plaintiff's diagnoses and functional limitations in March 2024. AR at 4339–43. The ALJ provided many reasons to find this opinion unpersuasive, and Plaintiff challenges only one: the ALJ noted that although Mr. McCracken opined that, since 2015, Plaintiff experienced 2–3 migraine headaches per month, and is incapacitated for three days with each headache, the treatment record does "not support a diagnosis

of migraines, let alone show they are incapacitating as [Mr. McCracken] has described." AR at 33. Plaintiff cites a 2023 mental health treatment note that reference complaints of migraines, but this treatment note does not reference a diagnosis of migraines nor does it describe ongoing headaches as frequent and severe as those described by Mr. McCracken. *See* AR at 5382. Plaintiff also cites a 2017 treatment note where she reported increasing migraines; her provider stated that he "again" discussed the "headache overlay" resulting from her chronic pain medication use, and recommended that Plaintiff adjust her propranolol dosage to control headache frequency. *Id*. at 1099.

Neither of the treatment notes cited by Plaintiff indicate that the ALJ erred in failing to include migraine headaches as a severe impairment at step two, if that is the error that Plaintiff intended to raise. The Commissioner has issued guidance explaining how to establish the existence of a headache disorder as a medically terminable impairment. *See* Social Security Ruling ("SSR") 19-4p, 2019 WL 4169635 (2019). Plaintiff does not cite evidence that would satisfy SSR 19-4p, which requires, among other things, that an acceptable medical source diagnose a headache disorder "only after excluding alternative medical and psychiatric causes of the person's symptoms." *Id*. at *6. SSR 19-4p also requires that for a headache disorder to qualify as a medically determinable impairment, a claimant's ongoing headaches must persist despite treatment. *Id*.

Plaintiff cites evidence that her doctor believed her headaches were related to her pain medication, and that medication adjustment was also needed. *See* AR at 1099. This treatment note therefore does not establish that a migraine disorder should have been included at step two, or that the ALJ erred in finding Mr. McCracken's description of Plaintiff's migraines to be

inconsistent with the record, and Plaintiff does not respond to the Commissioner's argument in this regard. *See* Dkt. No. 19 at 18. Accordingly, the Court affirms this part of the ALJ's decision.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff has failed to meet her burden to show harmful legal error in the ALJ's decision. Accordingly, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 2nd day of September, 2026.

Kymberly K. Evanson
United States District Judge